Catron, Ch. J.
delivered the opinion of the court.
Tipton and others applied by petition, for leave to cause to be condemned three thousand acres of land for the use of iron works they contemplated erecting. This occurred in 1816. The court appointed fifteen persons to lay off the land; thirteen of these reported to the court they had done so; the report was received and recorded; the land soon afterwards surveyed; and *424 so it remained until July 5, 1824, when Carter made an entry within the condemned lands. In 1825, Tipton & Co. had their iron works lands granted. In 1829, Carter had his entry granted.
1. Is Carter’s entry special? We think it is. Its locality could not be mistaken; and whether surveyed east or west of the beginning made by the surveyor, is immaterial, as against the younger grant of Tipton. He embraced the fifty acre entry in one of 1700. Act of 1823, ch. 49, sec. 7.
2. Does the iron works preference overreach the entry of Carter? If made in conformity to the act of 1809, it certainly would have done so, because Carter could not have lawfully entered, and could alone rely on his grant. The proceeding of the county court could be given in evidence to show Carter’s entry void, and thereby compel him to rely on his younger grant. For any irregularity in the proceedings, Tipton’s grant would not be void, because the court would not look behind it; but when he sets up the proceedings to defeat Carter’s entry, he must show a compliance with the statutes. The privilege is a very great one, and may be most readily abused by appropriating lands for cultivation; the guards thrown around the course to be pursued are slight, nor has the court the inclination, had it the power, to remove any of them.
1. The jury of view to be entrusted with examining the 3000 acres of land, is to consist of freeholders, by the act of 1809, ch. 30, sec. 2; and why? because they are presumed to know what land is, and what is not fit for cultivation; whereas mechanics and labourers about iron works, and such like persons, are unworthy of trust in such a matter, for want of knowledge; many of them also being unfit persons for want of force of character, and mainly because subject to the influence of the owner and applicant. This record does not in *425 form us that the jury was composed of freeholders; and the condemnation of others gave no right of preference.
J. A. M'Kinney and Taylor, for the plaintiffs in error.
Parsons and Kennedy, for the defendants in error.
2. The jury was appointed (fifteen in number) by name in the county court; whereas the act of assembly directs, that the sheriff shall summon twelve freeholders. It is insisted the appointment by the county court was quite as well. The legislature did not think so. It was thought the sheriff was the better judge of qualified jurors, and not subject to be dictated to by the petitioner, as the county court might be. The county court had no more right to appoint the jurors than the circuit court had; the act was wholly unauthorized, and the men appointed had no right to condemn, had they been freeholders.
We therefore think the circuit judge did not err when he told the jury the county court proceeding did not affect Carter’s entry, and order the judgment to be affirmed.
Judgment affirmed.